# CIRCUIT COURT OF THE CITY OF RICHMOND

Paul A. Weimer, Sr.

v.

Union Camp Corp.

November 26, 1980

Case No. LC 482

By JUDGE MARVIN F. COLE

The plaintiff, Weimer, in the case is an employee of Great Coastal Express, who is a common carrier of freight. The defendant, Union Camp Corporation, is a company engaged in the business of manufacturing bags.

On March 29, 1979, the plaintiff, a truck driver for Great Coastal, was dispatched by his employer to Union Camp to pick up a delivery of freight composed of bags. He reported to Union Camp and was there told which loading door to use to load his 45 foot tractor-trailer unit. This unit was driven by the plaintiff to the appropriate space inside the Union Camp warehouse to be loaded.

The tractor-trailer was to be loaded in accordance with usual and customary procedures that had been set up between the two companies and observed over a period of time. Union Camp had its bags in bundles that were placed on pallets. A fork lift, operated by a fork lift driver, Davis, picked up or lifted up the pallets and drove the fork lift aboard the trailer. He placed the pallets on the trailer where the plaintiff instructed him to place them. With the help of a Union Camp employee, who was furnished by Union Camp for the purpose, the plaintiff had the duty to remove the bundles from the pallets and to load the bundles aboard the trailer. The plaintiff was responsible for making decisions regard-

ing how and where the bags were to be stacked in the trailer.

The plaintiff kept a tally sheet of the bundles loaded on the trailer. The fork lift operator also kept a tally sheet of the bundles loaded upon the trailer. Needless to say the tally sheets were supposed to coincide. If the tally sheets did not agree, the entire load had to be unloaded, then loaded again so that the tally sheets would agree. Union Camp then would prepare a Bill of Lading based upon the count agreed upon by the fork lift operator and the truck driver.

The fork lift operator had just brought a load upon the trailer and was beginning to back out of the trailer. The plaintiff, also in the trailer, yelled at the fork lift driver asking the number of bundles of bags still to be loaded. The fork lift operator stopped, and the plaintiff took his clipboard with his tally sheet attached, and walked to the fork lift, which was still inside the trailer. The plaintiff and fork lift operator were comparing their tally sheets, with the fork lift operator sitting on the fork lift, and the plaintiff standing beside it, when the fork lift operator's foot slipped and hit the accelerator, causing the fork lift to run over the plaintiff's foot.

Union Camp is in the business of manufacturing paper bags and selling them to their customers. Delivery from the Richmond facility to customers out of town is via common carrier, paid for by Union Camp. At some other facilities Union Camp has their own trucks for delivery purposes.

The law in this instance is too clear to need repetition and has been cited many times in numerous cases. Section 65.1-29 of the Code of Virginia states that when any person undertakes to perform or execute any work which is a part of his trade, business, or occupation and contracts with any other person for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him. The difficult question in all of these cases is to determine precisely what is the trade, business, occupation or profession of the owner. And in this case the question to be determined

is to decide the scope of the trade, business, and occupation of Union Camp. Was the plaintiff engaged in the trade, business, and occupation of Union Camp at the time of his injury? If he was engaged in the trade, business and occupation of Union Camp at the time of is injury, then his exclusive remedy for such injuries is workmen's compensation. In the event that he is a stranger to the trade, business, and occupation of Union Camp, then he is entitled to bring this third party suit.

The Supreme Court of Virginia has followed in its decisions the test set down by Professor Arthur Larson in his work, *The Law of Workmen's Compensation*, and therein the test is stated as follows:

> The test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is whether this indispensable activity is, in that business, *normally* carried on through employees rather than independent contractors.

Code Section 65.1-40 provides in effect that the rights and remedies granted under the Workmen's Compensation Act shall exclude all other rights or remedies of the employee to recover for injury incurred during the course of his employment. Code Section 65.1-41 recognizes, however, that the employee can maintain an action at law against the person who caused the injury, provided such person is an "other party" within the meaning of Code Section 65.1-41. The question before us therefore is whether Union Camp, who was responsible for the acts of its employee, Davis, was an "other party" under the facts of this case.

Simply stated, an "other party" is one who is not the immediate employer, a special master, or a statutory employer or other statutory persons within the definition of Section 65.1-29 *et seq.* Obviously, the only way to establish who is an "other party" is by a case by case analysis.

Persons who function solely as suppliers and deliverers of goods have been held "other parties." *Burroughs v. Walmont, Inc.,* 210 Va. 98 (1969); *Hipp v. Sadler Materials Corp.,* 211 Va. 710 (1971). And there certainly should be no difference or no legal distinction between receiving items shipped in and shipping manufactured items out.

The court is of the opinion that the apex of the Workmen's Compensation umbrella in this case is Union Camp. The question is whether the plaintiff Weimer was performing any work at the time of the injury which was a part of the trade, business, or occupation of Union Camp, which would bring Weimer under the umbrella protection of Union Camp. I am of the opinion that he was not performing such work.

The defendant contends that "Because he was checking with Union Camp's fork lift driver to insure the accuracy of the count, which count Union Camp was responsible for to its customers, Weimer was a statutory employee of Union Camp at the time of his injury." With this I do not agree.

The fork lift operator, Davis, was responsible to his employer, Union Camp, to load the correct number of bags on the truck. This was part of the trade, business and occupation of Union Camp. Likewise, Weimer, was responsible to his employer, Great Coastal, to load the correct number of bags aboard the trailer so that the purchaser would receive the correct number of bags as shown on the Bill of Lading. In this responsibility Weimer was acting on behalf of his own employer, Great Coastal, and did not engage in or perform work which was normally done by Union Camp and which was part of the trade, business or occupation of Union Camp. The truck driver, Weimer, did not participate in the business of manufacturing bags.

The cases of *Bosher v. Jamerson,* 207 Va. 539 (1966), and *Burroughs v. Walmont, Inc.,* 210 Va. 98 (1969), are dispositive of the issue in this case.

Therefore, I overrule the plea of the Workmen's Compensation Act.